United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CEMENT MASONS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE CEMENT MASONS VACATION-HOLIDAY TRUST FUND FOR NORTHERN CALIFORNIA; BOARD OF TRUSTEES OF THE CEMENT MASONS PENSION TRUST FUND FOR NORTHERN CALIFORNIA; AND BOARD OF TRUSTEES OF THE CEMENT MASONS TRAINING TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>        Plaintiff(s),<br><br>  v.<br><br>VALLEY CONCRETE CONSTRUCTION INC., a California corporation.<br><br>        Defendant(s). | No. C-14-03519 DMR<br><br>**REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT [DOCKET NO. 17]** |

Plaintiffs Boards of Trustees of the Cement Masons Trust Funds move the court pursuant to Federal Rule of Civil Procedure 55(b)(2) for default judgment against Defendant Valley Concrete Construction Inc. ("Defendant" or "VCCI").[1]  Mot. [Docket No. 17] at 1. Plaintiffs seek unpaid

---

[1] Plaintiffs initially named Mark Hansen, the principal of VCCI, as a Defendant. Plaintiffs sought default judgment against Hansen as well as VCCI. However, Hansen is recently deceased. Plaintiffs have since filed supplemental briefing acknowledging Hansen's death and voluntarily dismissing him with prejudice from this action. Supp. Carrozzi Decl. [Docket No. 21] at ¶ 2, Ex. A;

employee fringe benefit contributions and related interest and liquidated damages, interest and liquidated damages for contributions that were paid but paid late, and attorneys' fees and costs. Plaintiffs also move for injunctive relief.

Defendant has not filed a consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Therefore, the court requests that this case be reassigned to a District Judge and issues this recommendation that the motion be **granted**.

## I. BACKGROUND

### A. Factual Allegations

Plaintiffs are the Boards of Trustees for the Cement Masons Health and Welfare Trust Fund for Northern California, Cement Masons Vacation-Holiday Trust Fund for Northern California, Cement Masons Pension Trust Fund for Northern California, and Cement Masons Training Trust Fund for Northern California (the "Trust Funds"). Compl. [Docket No. 1] at ¶ 3. The Trust Funds, established under Trust Agreements,[2] consist of all employee fringe benefit contributions that are to be made by employers pursuant to collective bargaining agreements as well as all returns on contributions. Compl. at ¶ 3; Lauziere Decl. at ¶¶ 4, 14, Exs. A-B. The Trust Funds are multiemployer benefit plans within the meaning of §§ 3 and 4 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002, 1003. Compl. at ¶ 5. The Trust Agreement permits the Boards of Trustees to seek judicial relief to recover prompt payment of contributions due, including the recovery of delinquent contributions, and further, to seek all attorneys' fees and costs incurred in a lawsuit to recover the delinquent contributions. Lauziere Decl. at ¶ 14, Ex. C. The Trust Agreement further provides that an employer must submit to an audit by the Board of Trustees. *Id*.

VCCI is a California corporation and an employer within the meaning of §§ 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5) and 1145. It is also an employer in an industry affecting commerce

---

Supp. Lauziere Decl. [Docket No. 22] at ¶ 3; Notice of Dismissal [Docket No. 19].

[2] Plaintiffs represent that the Trust Agreements for all four of the Trust Funds contain the same terms and conditions as the Trust Agreement for the Cement Masons Pension Trust Fund for Northern California. Lauziere Decl. at ¶ 13. Therefore, any references to the "Trust Agreement" apply to the Trust Agreements for all of the Trust Funds. Lauziere Decl. [Docket No. 14] at Exs. A-E.

within the meaning of the Labor Management Relations Act of 1947 ("LMRA") § 301, 29 U.S.C. § 185.  Compl. at ¶ 7.

On January 20, 2012, an entity called Valley Concrete Construction ("VCC") signed a memorandum agreement with the Cement Masons Union, whereby it became bound to a written collective bargaining agreement entitled the "Cement Masons' Master Agreement" ("Master Agreement").  Lauziere Decl. at ¶ 6, Ex. D.  In agreeing to the terms of the Master Agreement, VCC agreed to be subject to and bound by all provisions and conditions of the written Trust Agreements, which established the Trust Funds, and to all terms relating to wages, hours and conditions of employment.  Compl. at ¶ 9; Lauziere Decl. at ¶¶ 6-7.  Six days later on January 26, 2012, VCCI was incorporated.  Carrozzi Decl. at ¶ 3, Exs. B-C.  Decedent Mark Hansen, who had been the sole owner of VCC, became the only principal of VCCI.  Carrozzi Decl. at ¶¶ 3-4, Exs. A-C.  VCCI employs the same personnel employed by VCC.  Lauziere Decl. at ¶ 18, Exs. G-H.  From January 2012 through July 11, 2012, VCC paid employee contributions.  Supp. Lauziere Decl. at ¶ 6, Exs. A-B.  BeginningJuly 12, 2012, VCCI  reported hours and made contributions owed to Plaintiffs pursuant to the written Trust Agreements, and VCC ceased paying contributions.  Supp. Lauziere Decl. at ¶ 6, Exs. A-B.

The Master Agreement requires that employers pay contributions to the Trust Funds for each hour that their employees work as cement masons.  Lauziere Decl. at ¶ 15, Ex. E.  Employers are required to pay the employee fringe benefit contributions on or before the 25th day of the month immediately succeeding the month in which the employee's work was performed.[3]  Compl. at ¶ 10; Lauziere Decl. at ¶ 16, Ex. F.  An employer who fails to make the required contributions on or before the 25th day of the month is subject to interest on the delinquent contribution at a rate of 1.5% per month, as well as liquidated damages, which are set at $150 for each delinquent contribution.  *Id*.       The Trust Agreement permits Plaintiffs to file a lawsuit to recover payment of

---

[3] The Complaint alleges that employers are required to pay employee contributions to the Trust Funds on the 15th day of the month, not the 25th.  *See* Compl. at ¶ 10.  However, as Plaintiffs have described in their supplemental briefing, employees have a ten day grace period upon which to make the payment, such that interest and liquidated damages do not accrue unless the employer fails to pay on or before the 25th day of the month in which contributions are due.  Supp. Carrozzi Decl. at ¶ 3; Supp. Lauziere Decl. at ¶ 4.

3

delinquent contributions and all attorneys' fees and costs incurred. *Id*. Plaintiffs assert that they have performed all conditions, covenants and promises, in accordance with the terms and conditions of the Master Agreement and Trust Agreements. Compl. at ¶ 12. Plaintiffs allege that Defendant has breached all of its obligations by failing to report, and thus failing to pay all employee fringe benefit contributions for the periods April, June-September, and November 2012; and January-June, and September 2013 in the principal amount of $71,906.38. Plaintiffs also allege that Defendant has failed to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions for those periods in the amount of $23,377.27. Lauziere Decl. at ¶ 22, Exs. B, K. In addition, Plaintiffs allege that Defendant breached its obligations by failing to pay interest and liquidated damages on employee fringe benefit contributions that were paid, but paid late, for the period of March-August 2012 in the amount of $1,497.82. *Id.*

**B. Procedural History**

Plaintiffs filed their Complaint on August 4, 2014, bringing four causes of action: (1) breach of the collective bargaining agreement; (2) recovery of unpaid trust fund contributions pursuant to 29 U.S.C. § 1145; (3) breach of fiduciary duty; and (4) mandatory injunction. Compl. at ¶¶ 3-10. The first, second, and fourth causes of action were brought against VCCI.[4] Compl. at ¶¶ 3-10. Plaintiffs now seek default judgment against VCCI on the second cause of action for violation of ERISA. Plaintiffs also request injunctive relief in the form of an order requiring VCCI to submit to an audit to determine the amount of trust fund contributions due and owing.

After Plaintiffs served the summons and Complaint on Defendant, Plaintiffs requested that the clerk enter default against it; the clerk did so. [Docket Nos. 2-10.] This motion followed.

## II. MOTION FOR DEFAULT JUDGMENT

**A.     Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment following a defendant's default. Fed. R. Civ. P. 55(b)(2). Whether to enter a judgment lies within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Shanghai Automation Instrument*

---

[4] The third cause of action was brought against Hansen, and has since been dismissed. *See* Compl. at ¶¶ 3-10; Supp. Carrozzi Decl. at ¶ 2, Ex. A.

4

*Co., Ltd. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001) (citation omitted). Before assessing the merits of a default judgment, a court must confirm it has personal and subject matter jurisdiction, and ensure that the defendant has been adequately served. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

If the court finds these requirements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant default judgment: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits. *Eitel*, 782 F.2d at 1471-72 (citations omitted). In this analysis, a court takes the well-pleaded factual allegations in the complaint as true except those relating to the amount of damages. *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citations omitted).

### B. Jurisdiction and Service of Process

The court exercises personal jurisdiction over VCCI because (1) the Trust Fund contributions are made to, and benefits are paid from, a corporate co-trustee bank in the Northern District of California, Compl. at ¶ 2; and (2) VCCI's principal place of business is in Orangevale, California. Compl. at ¶ 7.

The court has subject matter jurisdiction over this case pursuant to 29 U.S.C. §§ 185 (granting labor union organizations power to sue employers in federal court) and 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms). Defendant qualifies as an "employer" under §§ 3(5) and 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145, and as an employer in an industry affecting commerce within the meaning of LMRA §301, 29 U.S.C. § 185. Compl. at ¶ 7.

The Federal Rules of Civil Procedure allow for service on an individual by delivering a copy of the summons and complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). The court has reviewed the proof of service and the record and finds that the summons and Complaint were properly served on Defendant via personal service. *See* Docket No. 7.

## C. *Eitel* Factors

### 1. Prejudice

Turning to the *Eitel* factors, under the first factor, Plaintiffs will suffer prejudice if the court does not enter a default judgment because Plaintiffs are otherwise likely to be "without other recourse for recovery." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also U.A. Local No. 467 Trust Fund v. Hydra Ventures, Inc.*, No. C-12-3746 EMC, 2013 WL 1007311, at *6 (N.D. Cal. Mar. 13, 2013) (first *Eitel* factor weighed in favor of default judgment for plaintiff trust funds against defendant employer who had failed to make employee benefits contributions because plaintiffs would otherwise likely be without a remedy).

### 2. Merits of Claim and Sufficiency of Complaint

Plaintiffs' second cause of action alleges that Defendant violated 29 U.S.C. § 1145. Section 1145 provides that, "[e]very employer who is obligated to make contributions to a multiemployer benefit plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Thus Plaintiffs must sufficiently allege the following: (1) the plans are multiemployer plans as defined by 29 U.S.C. § 1002(37); (2) the collective bargaining agreement obligated Defendant to make the disputed contributions; and (3) Defendant did not make the required contributions. *Id*.; *see also Bd. of Trustees of Cement Masons Health & Welfare Trust Fund for N. California v. C & C Concrete Inc.*, No. C 10-03343 LB, 2013 WL 2456560, at *5 (N.D. Cal. June 6, 2013).

Plaintiffs have alleged the required elements for this claim. Plaintiffs aver that the Trust Funds are multiemployer benefit plans within the meaning of 29 U.S.C. § 1002(37). Compl. at ¶ 5. Plaintiffs assert that VCC signed a written collective bargaining agreement by which it agreed to become bound by the written Trust Agreements that established the Trust Funds, and that VCCI is the successor to VCC.[5] Compl. at ¶ 9; Lauziere Decl. at ¶¶ 6, 15, Exs. A-E. Plaintiffs also allege that VCCI failed to pay contributions owed in accordance with the terms and conditions of the collective bargaining agreement. Compl. at ¶¶ 16-20; Lauziere Decl. at ¶¶ 19-24, Exs. I-K.

---

[5] The court examines below whether VCCI is properly alleged to be the successor of VCC.

6

Plaintiffs' Accounts Receivable Manager submitted a declaration stating that Plaintiffs conducted an employer audit and discovered that VCCI failed to report, and thus failed to pay, all employee fringe benefit contributions on behalf of its covered employees for the period April, June-September, and November 2012; and January-June, and September 2013. Lauziere Decl. at ¶ 19. Plaintiffs produced a summary of the audit results showing the number of hours of covered work for which contributions were due, but not reported, and not paid. Compl. at ¶¶16-20; Lauziere Decl. at ¶¶ 19-24, Exs. I-K.

Accordingly, the second and third factors also weigh in favor of default judgment on Plaintiff's second cause of action.

### 3. Amount of Money at Stake

The fourth *Eitel* factor also weighs in favor of granting default judgment. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Constr., Inc.*, No. 11-CV-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, "when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Core Concrete*, 2012 WL 380304, at *4 (recommending default judgment where the amount of money sought against the employer was supported by the evidence and required by both the collective bargaining agreement and 29 U.S.C. § 1132). Here, the total sum of actual and statutory damages, interest, attorneys' fees, and costs that Plaintiffs seek to recover is $131,905.49 from VCCI. The amounts owed are tailored to the specific misconduct of the Defendant, and its failure to pay contributions. The amounts owed are also supported by the evidence, the collective bargaining agreement, and by statute, and are properly calculated as discussed below. Thus, the fourth factor also supports granting default judgment.

### 4. Possibility of Factual Disputes

The fifth *Eitel* factor considers the possibility of factual disputes. Most of the facts at issue are unlikely to be disputed. One set of facts that could be disputed concerns whether VCCI is the successor to VCC.

To determine whether one company is the successor of another, courts consider the following seven factors ("the *Jeffries* factors"): whether (1) there has been a substantial continuity of the same

business operations; (2) the new employer uses the same plant; (3) the same or substantially the same work force is employed; (4) the same jobs exist under the same working conditions; (5) the same supervisors are employed; (6) the same machinery, equipment, and methods of production are used; and (7) the same product is manufactured or the same service is offered. *N.L.R.B. v. Jeffries Lithograph Co.*, 752 F.2d 459, 463-68 (9th Cir. 1985). In this analysis, the primary focus is on whether there is "substantial continuity" between the enterprises. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 43 (1987); *Resilient Floor Cover Pension Fund v. Michael's Floor Covering, Inc.*, No. C11-5200 JSC, 2012 WL 8750444, at *4 (N.D. Cal. Nov. 1, 2012). The absence of one *Jeffries* factor does not preclude a claim of successorship. *Trustees For Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 516 (9th Cir. 1987).

Here, Plaintiffs' submissions support that there is "substantial continuity" between VCC and VCCI's business operations. Hansen was the sole owner of VCC, and then became the sole principal of VCCI. Carrozzi Decl. at ¶¶ 3-4, Exs. A-C; Lauziere Decl. at ¶18, Exs. G-H. From January 2012 through July 11, 2012, VCC paid employee contributions. Supp. Lauziere Decl. at ¶ 6, Exs. A-B. VCC then incorporated and became VCCI. Carrozzi Decl. at ¶ 4. As of July 12, 2012, VCC stopped paying contributions, and VCCI began reporting hours and making contributions owed to Plaintiffs pursuant to the written Trust Agreements. Supp. Lauziere Decl. at ¶¶ 6-7, Exs. A-B. At no point in time did both companies pay contributions for the same time period. Supp. Lauziere Decl. at ¶ 6. VCCI remained at the same address as VCC. Carrozzi Decl. at ¶¶ 3-4, Exs. A-C. Furthermore, the two companies employed substantially the same work force; from July 12, 2012 onward, VCCI paid, reported hours, and made contributions on behalf of the same employees as were employed by VCC. Lauziere Decl. at ¶ 18, Exs. G-H; Supp. Lauziere Decl. at ¶¶ 6-7, Exs. A-B. This is sufficient to demonstrate that VCCI is a successor to VCC, and that it is liable for the amounts owed as reported by VCC. Lauziere Decl. at ¶¶ 20-21, Ex. I-J; Supp. Lauziere Decl. at ¶¶ 6-7, Exs. A-C. Therefore, the fifth *Eitel* factor also weighs in favor of entering default judgment against Defendant.

**5. Excusable Neglect**

As to the sixth *Eitel* factor, Defendant was aware of the lawsuit, permitted the audit, and then failed to participate in the litigation once the audit was completed. Mot. at 13. There is no evidence

that Defendant's failure to participate in this litigation, or to participate in this proceeding, is due to excusable neglect.

### 6. Policy Against Default Judgment

Finally, although default judgment is disfavored, and a case should be decided upon its merits whenever reasonably possible, this preference for adjudication on the merits is not dispositive. *Tragni v. Souther Elec. Inc*., No. C 09-32 JF(RS), 2009 WL 3052635, at *6 (N.D. Cal. Sept. 22, 2009) (citation omitted). The strong policy favoring efficient resolution of collections actions under ERISA must be given great deference. *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv.*, 870 F.2d 1148, 1153 (7th Cir. 1989). Plaintiffs have already been prejudiced by a loss of Trust Fund assets due to Defendant's failure to pay contributions. While the Federal Rules of Civil Procedure's policy favors a resolution on the merits of this dispute, that policy is outweighed by an interest in the prompt resolution of this matter. *Id*.

Examining the facts in the aggregate, the court finds that the first six *Eitel* factors outweigh the Federal Rules of Civil Procedure's strong preference for a decision on the merits. The court therefore recommends that Plaintiffs' motion for default judgment be granted.

## III.   DAMAGES

**A. Legal Standard**

To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). With respect to cases arising out of ERISA, the statute declares the following:

> in any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest on unpaid contributions is determined by using the rate provided under the plan. *Id.*

"It is settled Ninth Circuit law that [an award under Section 1132(g)(2)] is mandatory and not discretionary." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 569 (9th Cir. 1984) (noting that the statutory language in Section 1132(g)(2) that "the court *shall* award the plan" unpaid contributions, interest, the greater of interest or liquidated damages, and reasonable attorneys' fees). For a mandatory award under section 1132(g)(2), three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (citations omitted).

**B. Unreported, Unpaid Contributions**

Plaintiffs conducted an employer audit and discovered that VCCI failed to report, and thus failed to pay, all employee fringe benefit contributions on behalf of its covered employees for the period April, June-September, and November 2012; and January-June, and September 2013. Compl. at ¶ 13; Lauziere Decl. at ¶¶ 19-21, Exs. I-J. Pursuant to 29 U.S.C. § 1132(g)(2)(A), Plaintiffs are entitled to an award of the unpaid principal balance of the contributions totaling **$71,906.38**. *Id*.

Pursuant to 29 U.S.C. § 1132(g)(2)(B), Plaintiffs are further entitled to interest on the unpaid contributions. The Pension Trust Agreement states that an employer who fails to make the required contributions on or before the 25th day of the month is subject to interest on the delinquent contribution at a rate of 1.5% per month. Lauziere Decl. at ¶ 22, Exs. B, K. Plaintiffs have calculated interest on the unpaid contributions to be **$23,377.27**. *See id.*

Pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional award in an amount equal to the greater of the interest on the unpaid contributions or liquidated damages at the contract rate. *See Operating Eng'rs*, 746 F.2d at 569 (where the prejudgment interest exceeded the amount of liquidated damages available under the parties' agreement, "the district court was . . . statutorily required to award the [plaintiffs] an amount equal to the prejudgment interest as liquidated damages."). The liquidated damages are $0. Lauziere Decl. at ¶ 23, Ex. K. Given that the interest is greater than the liquidated damages, Plaintiffs are entitled to an additional award of

interest at **$23,377.27**. *See id*.

### C. Late-Paid Contributions

Plaintiffs contend that Defendant did pay contributions for the period March 2012-August, 2012, but paid these contributions late. Lauziere Decl. at ¶ 25, Ex. L. The Master Agreement and Trust Agreements require Defendant to pay interest on any late contributions in the amount of 1.5% per month, and to pay $150.00 for each late contribution "as liquidated damages, and not as a penalty." Compl. at ¶ 10. *See Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.,* 875 F. 2d 212, 216-17 (9th Cir. 1989) (Section 1132(g)(2) does not preclude alternative contractual remedies, and permits court to enforce contract term for interest and liquidated damages for contributions that were paid, but paid late). Interest and liquidated damages on contributions that were paid late amount to $1,497.82 as calculated through November 30, 2014. *Id*. Thus, under section 1132(g)(2)(E), Plaintiffs are entitled to interest and liquidated damages on employee fringe benefit contributions that were paid, but paid late in the amount of **$1,497.82**.

### D. Attorneys' Fees and Costs

Pursuant to both 29 U.S.C. § 1132(g)(2)(D) and the Trust Agreement, Article IV, Section 3, Lauziere Decl. at ¶ 14, Ex. C, Plaintiffs are entitled to their attorneys' fees and costs incurred in a suit to enforce payment of outstanding contributions.

Plaintiffs incurred $10,250.00 in attorneys' fees representing 36.3 hours of time billed by three attorneys at the law of firm of Bullivant Houser Bailey PC: (1) Edward D. Winchester, an associate, who billed .06 hours at the rate of $254.17 per hour; (2) Arlena Carrozzi, an associate, who billed 30.1 hours at the rate of $275 per hour; and (3) Ron Richman, a shareholder, who billed 2.4 hours at a rate of $325 per hour. Carrozzi Decl. at ¶¶ 6-12, Ex. D.

The work performed by Plaintiffs' counsel included contacting Defendant via letters, determining the amount owed, preparing, filing and serving the initial Complaint, researching applicable case law, requesting entry of default, and preparing the motion for default judgment. Carrozzi Decl. at ¶¶ 11-12, Ex. D. Counsels' fees of $325 per hour for shareholders, and $254.17 per hour and $275 per hour for associates are reasonable San Francisco Bay Area rates for ERISA claims. *See, e.g.*, *Oster v. Std. Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (approving

hourly rate of $400 for associates); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability*, Case No. 08-CV-02560 SI, 2010 WL 1460201, at *2 (N.D. Cal. Apr. 12, 2010) (approving hourly rate of $550 for partner); *Bd. of Trustees of Cement Masons Health & Welfare Trust Fund for N. California v. C & C Concrete Inc.*, No. C 10-03343 LB, 2013 WL 2456560 at *9 (N.D. Cal. June 6, 2013) (approving rate of $325 per hour for shareholder).

Having reviewed Plaintiffs' billing records, the court finds that the 36.3 hours expended are reasonable. The court therefore recommends that Plaintiffs recover $**10,250.00** in attorneys' fees.

Federal Rule of Civil Procedure 54(d)(1) grants district courts the discretion to award costs to prevailing parties. Fed. R. Civ. P. 54(d)(1); *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013). Plaintiffs have incurred $1,496.75 in reasonable costs in the action to date. Carrozzi Decl. at ¶ 12, Ex. D (describing filing fees and service costs). The court therefore recommends that Plaintiffs be granted **$1,496.75** in costs.

### D.  Audit of Defendant

Plaintiffs request an injunction compelling VCCI to submit to an audit of its financial records for the period October 2013 through the present, to determine the full amount of employer contributions owed to the Cement Masons Trust Funds. Plaintiffs have alleged that Defendant is required under the Pension Trust Agreement to allow the Trust Funds access to its books and records to determine the amount of trust fund contributions due and owing. Compl. at ¶¶ 13, 24-27. Lauziere Decl. at ¶14, Ex. C. Furthermore, the right of employee benefit plans to enforce such power to audit is well-established. *See generally, Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985). An audit is "well within the authority of the trustees as outlined in the trust documents" and is part of "proper plan administration." *Id*. at 581-82. Plaintiffs have therefore established that injunctive relief is appropriate to allow a Trust Funds auditor to enter VCCI's premises, and to conduct an audit of its financial records for the period October 2013 to the present.

## IV.  CONCLUSION

Based on the foregoing analysis, the court **recommends** that the District Court **grant** Plaintiffs' motion for default judgment.

The court further recommends that the District Court award Plaintiff Trust Funds a monetary

12

judgment against Defendant Valley Concrete Construction Inc. as follows: (1) unreported, unpaid contributions under 29 U.S.C. § 1132(g)(2)(A) in the amount of **$71,906.38**, with related interest under § 1132(g)(2)(B) in the amount of **$23,377.22**, and interest under § 1132(g)(2)(C) in the amount of **$23,377.22**; (2) liquidated damages and related interest accruing on contributions paid, but paid late in the amount of **$1,497.82**; and (3) attorneys' fees in the amount of **$10,250.00**, and costs incurred in the amount of **$1,496.75**. Thus, the court recommends that the District Court award Plaintiffs a total of **$131,905.49** against Defendant.

The court further recommends that the District Court grant an injunction compelling VCCI to allow a Trust Funds auditor to come onto its premises and to perform an audit of its financial records and the financial records of VCC for the period October 2013 through the present including, but not limited to, the following records:

> Individual earnings records; federal tax forms W-3/W-2 and 1069.1099; reporting forms for all Trust Funds, State DE-3/DE-6 Tax Reports; Workers' Compensation insurance; employee time cards; payroll registers/journals; quarterly payroll tax returns (Form 941); check register and supporting cash vouchers; forms 1120, 1040 or partnership tax returns; general ledger; source records, including time cards and time card summaries for all employees; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation of Defendant's financial records.

Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on Defendant and file proof of service with the court. Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

IT IS SO ORDERED.

Dated: April 7, 2015



_____
DONNA M. RYU
United States Magistrate Judge